```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
                                :
UNITED STATES OF AMERICA,       :   APPEAL FROM, AND
                                :   OBJECTIONS TO, THE ORDERS
                                :   OF THE MAGISTRATE JUDGE
     -against-                  :   ISSUED MARCH 24 AND MARCH
                                    29,2010, AND REQUEST FOR
                                    A STAY OF THE SUPPRESSION
                                    HEARING SCHEDULED FOR
                                    MARCH 31._____
                                :        09-573BMC
                                :
EARL MORGAN,                    :
                                :
                                :
               Defendant.       :
--------------------------------x
```

Earl Morgan, defendant in the above captioned case, by his undersigned counsel, and based on all the prior papers and proceedings herein, hereby appeals from, and objects to, those parts of the order of the Magistrate Judge issued on March 24, 2010, denying defendant's request for a so-ordered subpoena for the UF-250 Stop and Frisk Reports and other NYPD records of the stop and frisk of defendant on July 25, 2009, and such Reports and records filed by the arresting officers over the last five years, and denying defendant's request for pre-hearing and trial in-court interviews of the police officers under *United States v. Saa*, 859 F.2d 1867 (2d Cir. 1988),and he appeals from, and objects to, the order of March 29, denying defendant's request to adjourn

the March 31 suppression hearing to permit rulings on these and other objections and appeals pending and seeks a stay of the hearing (Copies of the orders are attached in hard copy, see the March 24 order at pages 6-7, 10-11).( Due to a printer failure in the midst of preparation of these objections, the Passover Holidays, and preparation for the scheduled hearing on the day following the night of the second Seder, the format of the hard copy reproduced on a different commercial machine will be different and will not include this sentence).

    Pending decision by this Court is an already filed appeal and objections to an ex parte order of the Magistrate Judge issued March 16, and now also the instant appeal and objections form the orders of March 24 and 29, all of which impact defendant's right to the production of evidence at the suppression hearing scheduled for March 31. Defendant sought an adjournment of the hearing to permit decisions on these appeals and objections by this Court prior to the hearing, and because the intervention of the Passover holidays, the absence of a witness, government discovery disclosures not available until the evening of the first Passover seder, other discovery which the Magistrate Judge

only agreed to order from the NYPD on March 26 and not yet available, the absence of secretarial help over the Passover holidays, a computer printer failure, and the need to prepare and file these objections, impeded defense counsel's preparation for the hearing. See the letter motions of Counsel dated March 26 and 28, attached hereto in the hard copy. The Magistrate Judge denied the request for an adjournment in an order on March 29, attached hereto in hard copy. For all of the above reasons, the Court should stay the hearing.

    Defendant was arrested on July 25, 2009, by officers of the New York City Police Department, in the area of Navy and Park Streets in Brooklyn and subsequently charged in a federal indictment with possession at the time of his arrest of a firearm as a prior felon (18 U.S.C.§922(g)(1)). He has filed pre-trial motions, which included suppression, discovery and a request for a so-ordered subpoena for NYPD documents and witnesses.

    Defendant made a public request for a so-ordered subpoena for some documents and witnesses, anticipating that as to those, there would almost certainly be a motion to quash, which would be public, therefore for expediency sake,

to short circuit the length of the process, he included those in his publically filed motions. The order of March 24, objected to herein in part, denies only the request for the subpoena of the following NYPD documents:

>     (1) certified copies of the UF-250 forms and records of the stop and frisks of defendant and a companion, Derrick McDuffie, who was walking with defendant at the time, on July 25, 2009, and the stop and frisk records of the arresting officers over the last five years,

and it denies defendant's request for pre-hearing and trial interviews of the arresting officers to determine, in court, if they will submit to defense questioning prior to hearing and trial.

The Magistrate Judge's order denying the subpoena for these documents is erroneous because the requested documents are relevant, evidentiary, and admissible, and are necessary and material to preparation of the defense. These records are non-hearsay, business records and admissible as evidence of habit and practice, of the absence of required business records to show consciousness of improper practice, and excited utterances.

As part of his motions, defendant submitted his own affirmation that he did not urinate on the southeast corner of Navy and Park Streets, which the police alleged in their state and federal complaints was the reason for initially stopping him (copy attached in hard copy). Defendant also expects to adduce other evidence that he did not urinate at the southeast corner of Navy and Park. Defendant also submitted the affirmation of his undersigned counsel, with attached exhibits, showing that officers from the same police precincts had twice before arrested and prosecuted defendant for attempted murder and assault, that one such case was dismissed and another resulted in an acquittal, and that defendant sued for malicious prosecution and won a money settlement from the City of New York (See the Stern Affirmation and Exhibits, dated January 27, 2010, ECF document #26). Thus, the requested stop and frisk documents are evidence that the police were targeting defendant in that neighborhood, and that the arrest was for that reason and not because he had urinated in the open on a public sidewalk.

Finally, defendant submitted a DD-5 complaint report by the police stating that following defendant's arrest, two

detectives from the neighboring precinct interrogated him on the basis of the "Active Warrant Card, I-Card#109-14401",(copy attached in hard copy) indicating that the reason for the stop was the police interest in custodial interrogation of defendant related to homicides in that neighborhood, not because of his public urination.

Based on all of the above evidence of police misconduct, defendant is entitled to the additional documentary evidence he seeks

All police officers are required to complete and file certain forms for all stops and frisks. At least one such form is the UF-250; it requires statements of the rationale for the stop, the means used, the nature of any frisk, and what was uncovered, and the reason for the arrest, among other information. See *Floyd v. City of New York*, 2008 WL 4179210 (S.D.N.Y. 2008). This form regarding the stop and frisk in this case, as well as any other records of the stop and frisk, are obviously relevant. The defense has evidence that the stop in this case was not based on probable cause or reasonable suspicion and that the police have falsified a rationale. Aside from Mr. Morgan's averment submitted with his motion, the defense has adduced other evidence that Mr.

Morgan did not urinate at the southeast corner of Navy and Park, as the police have averred in their state and federal complaints as the rationale for the stop. The falsity of the police testimony will not only be relevant on the issue of the stop and frisk, but it will be relevant at the trial itself on the issue of whether the police have lied about Mr. Morgan's possession of a gun allegedly found as a result of the stop. These records are sought now, prior to a hearing or trial date, because they are necessary to ongoing defense preparation. See *F. R. Crim P. 17(c)(1)*.

 Defendant also seeks an in-court opportunity to determine the willingness of the officers to be interviewed prior to trial. There has been no assertion by the law enforcement officer witnesses that they are under threat of harm from defendant who is incarcerated, and they have information about the event that is relevant to the accusations made against defendant. There is also evidence that some of the police officer witnesses are not telling the truth, and that they and/or the government are covering-up the presence on the scene of as many as 8 policemen.

 Where there is no threat of harm or subornation of perjury, the government will be required to disclose the

names of witnesses to the events. *United States v. Bailey*, 834 F.2d 218 (1st Cir. 1987); *United States v. Madeoy*, 652 F. Supp. 371 (D.C. Cir. 1987); *United States v. Stroop*, 121 F.R.D. 269 (E.D.N.C. 1988).

Even in the case of a confidential informant, for whom there is a confidentiality privilege, disclosure of the informant's identity is required by due process of law when he has information relevant to the defense and that information is essential to the fair determination of the action. *Roviaro v. United States*, 353 U.S. 53 (1957). In this case, with regard to the police officers, there is no confidentiality privilege, and even if there were, *Roviaro* would require disclosure. The government should not have exclusive access to witnesses who have information relevant to the defense, nor should it be permitted to selectively choose the witnesses whose information comports with its view of the case, and ignore others while denying access to the defense. See *United States v. Bailey, supra*.

The Court of Appeals for the Second Circuit holds that even where there is some danger to a witness, the government must make the witness available to the defense in court for an interview, at which time the witness can testify to his

8

willingness to be interviewed. The government may not satisfy that obligation merely by passing along a defense request for an interview and the witness' declination. *United States v. Saa*, 859 F.2d 1867 (2d Cir. 1988).

Defendant requests the same *in camera* interview in this case with regard to the three police officers so far named, Sergeant James Glancy, and Officers William Mosquera and Francisco Tejada, and any other officers yet to be named. Defense counsel has written to the three named officers at the 84th Precinct and to the two Detectives from the 88th who questioned defendant after his arrest. The letters requesting a response whether or not the officers would submit to interviews were sent with return receipt requests to ensure that the letters were received. The return receipts were not signed by the officers, so it is not known whether they received the letters, especially since the government has refused to supply their badge numbers.

In order for defendant to completely investigate those officers for evidence of which the jury should be aware to properly assess their credibilities and habits and practices, defendant should have access to any bad acts and habits and practices in their records bearing on

9

credibility, and wrongful stops and arrests, and to the UF-250 forms, which they were required to file for the stops and frisks in this case, and for other stops and frisks that they have made, and any other records of stops and frisks that have not led to arrests or that have otherwise been found to be unlawful as evidenced in their UF-250 forms. See discussion, *infra,* of the UF-250.

Defendant is Afro-American, and black people are stopped and searched by the New York City Police Department at a rate double the size of the black population in the City. Fifty percent of all stops are of black people who comprise only a quarter of the City's population. Center for Constitutional Rights. *Racial Disparity in NYPD Stops and Frisks: Preliminary Report on UF-250 Data from 2005 through June 2008*, copy attached to defendant's publicly filed motions.[1]  When Latinos are included in the statistics, more than 80% of the stops are conducted against these racial groups, and this statistic has been consistent since 1997 and 1998. Attorney General of the State of New York.  *The*

---

[1] The data are based on the UF-250 forms which the police are required by NYPD regulation and Court order to file providing information on the facts, circumstances, rationales, and race of people stopped and frisked for each stop made. See Center for Constitutional Rights, *supra; Floyd v. City of New York*, 2008 W.L. 41792 (S.D.N.Y. 2008)(Scheindlin, J.)

*New York City Police Department's Stop and Frisk Practices: A Report to the People, 1999*, excerpts attached to defendant's publicly filed motions.

These profiling rates are based on statistics which control for the variables of higher crime rates among low income populations and communities, and are enhanced by the data that show that the rate of arrests following stops is only in the range of 4 to 6%. Center for Constitutional Rights, supra. That means that in the overwhelming number of stops, which include frisks and the use of physical force, the people stopped have not committed crimes. Although the data for the special Street Crime, a/k/a Anti-crime, Units, which made the stop and arrest in this case, have not yet been separately tabulated for the years 2005-2008, the Attorney General reported in 1997-98 that those units stopped twice as many people as other precincts or police commands for each arrest made. *Attorney General, supra*.

Thus, the possibility that the stop of the defendant in this case was unfounded is very real, and he should be accorded every avenue of investigation, particularly, as in most stop encounters, the police claim multiple witnesses of

impeccable law enforcement credentials to the event which they instigated, and defendants are bereft of resources to probe the validity of the stop. One such avenue of defense investigation is the disciplinary records and the UF-250 records.

Under similar circumstances, Courts have issued "so ordered" subpoenas for the types of records sought here. *United States v. Newby*, 251 F.R.D. 188 (E.D.N.C. 2008); *United States v. Hayes* 376 F. Supp.2d 736 (E. Mich. 2009); *United States v. Greene*, 144 F.R.D. 631, 640-41 (W.D.N.Y. 1992); *United States v. Gatto*, 729 F.Supp. 1478 (D. N.J. 1989); *United States v. DeBacker*, 493 F.Supp. 1078, 1982 (W.D. Mich. 1980); cf. *United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995). As Judge Scheidlin in the Southern District has held, where there is some evidence of law enforcement misconduct, the defendant should be entitled to subpoena records from other sources to pursue such evidence. *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008).

The Magistrate Judge denied the subpoena for the UF-250, and any other, search and seizure records in this case, made by the police officers who made the stop and search,

and the other documents requested, on the grounds that the request is "overbroad and irrelevant."( March 24 order, p.10). However, defendant has specified the request for the records of the stop and frisk to those in this case, and for the records of the stops and frisks of the officers involved in this case over the last five years. Defendant submits that the Judge is mistaken, that the District Court cases she cites do not preclude the subpoena for the materials specifically sought in this case, and that the cases cited by defendant, *supra*, support the issuance of the subpoena for these materials.

In fact, the Magistrate Judge herself acknowledges the support and rationale for the evidentiary need and relevance for the stop and frisk records when she grants defendant's motion for the production of the disciplinary records of the police officers.

> Under the circumstances of this case, the case against the defendant at trial and at the suppression hearing will turn on the testimony of the officers. In addition, substantial allegations may be relevant under Rule 404(b) of the Federal Rules of Evidence to show each officer's motive or intent and under Rule 406 to show habit or practice. Moreover, such records would likely be the kind of information that the government would be required to produce under *Brady/Giglio*.

13

Order March 24, 2010, at p. 9, attached hereto in hard copy.

The Magistrate Judge relies on cases that are distinguishable. For example, in *United States v. Ceballo*, 2003 WL 21961123 (S.D.N.Y. 2003), and *United States v. Cherry*, 876 F. Supp.2d 547, 551 (S.D.N.Y. 1995), the defendant's purpose was "simply to gain access to the government's entire file" of NYPD reports. The Courts held that the work product doctrine precluded such a wholesale disclosure of investigative files, particularly when there was no showing of the evidentiary nature of the documents and that defense preparation required them.

In this case, the subpoena requests specific documents which are not investigatory reports, or memoranda of interviews prepared for the litigation, but, rather, the UF250, search and seizure records, which the police are required to prepare in the normal course of business (*Vasquez v. McPherson*, 285 F.Supp.2d 334 S.D.N.Y.2003), and which are themselves evidentiary in nature, and, without which, the defense cannot prepare to show at the hearing and trial that defendant was stopped unlawfully for reasons unrelated to public urination or gun possession, but for questioning in connection with routine crime patrol in the

14

neighborhood and that it was the habit and practice of these police officers to so stop and question. *F.R. Evid. 406.*

The Second Circuit holds that records of prior police stops are relevant evidence to show habit and practice of unlawful conduct. In a lawsuit by plaintiffs alleging that they were unlawfully stopped by a police officer on one occasion, the Circuit upheld a subpoena for records of that police officer's prior stops.

> The information is clearly relevant to the [plaintiffs'] case. As the District Court found, it was relevant to proving a pattern and practice of illegal stops by [the police officer]. The information would also provide cogent evidence of whether or not [the police officer] in fact engaged in the type of illegal conduct alleged.

*Gonzales v. NBC*, 155 F.3d 618, 628 (2d Cir. 1998), opinion withdrawn on other issues and replaced by 194 F.3d 29 (2d Cir. 1998)("the District Court reasonably found [the information] may assist the trier of fact in assessing whether [the police officer] had probable cause to stop the NBC vehicle and might help to determine whether he engaged in a pattern or practice of stopping vehicles without probable cause as the Plaintiffs allege").

Furthermore, it is an evidentiary fact, if the police did not, as required by their regulations, file the UF-250'S in this case, and in other cases, an admission that they were not engaged in lawful conduct during the stop and search. *F.R.Evid* 803 (10); *United States v. Metzger*, 778 F.2d 1195 (6th Cir. 1985).

The UF-250's, like radio transmissions, may also qualify as excited utterances and present sense impressions, because they were made nearly contemporaneously with the events. See *United States v. Harrison*, 101 F.3d 686 (table), 1996 WL 289986 (2d Cir. 1996)(unpublished); *F.R. Evid* 803(2); *United States v. Alexander*, 331 F.3d 116 (D.C. Cir. 2003); *United States v. Joy*, 192 F.3d 761 (7th Cir. 1999).

Thus, that these materials have impeachment value, in that they will contradict the government's case, does not disqualify them for production. Rather, it also renders them required production under due process of law as exculpatory evidence for the defense. The impeachment rubric applies only to prior statements, qua prior statements, the production of which are governed by 18 U.S.C.§3500. *United States v. Nixon*, 418 U.S. 683, 700 (1974), holds in this regard only that prior statements to be used only as

impeachment material cannot be subpoenaed, and it holds that prior statements which are not hearsay (i.e. excited utterances, business records, admissions by a party, statements under oath, absences of a record, etc.) and prior statements and documents which have another evidentiary purpose may be subpoenaed as long as they are relevant, specific, and admissible, as are the items defendant seeks.

In attempting to distinguish the cases cited by defendant in support of his subpoena requests, the government reiterates the applicability of these cases, conceding that in all of them, one way or the other, under *Brady, Giglio*, or otherwise, the defendant was entitled to the materials. See Gov't Mem. at p.22n.6. The government seems to attempt to distinguish *United States v. Green*, 141 F.R.D. 631 (W.D.N.Y. 1992), by quoting part of its holding that the government can't produce what it doesn't have, but in this case, defendant does not ask that of the government; it asks that the subpoena be directed to the New York Police Department, which does have these materials.

The government claims that in this case, "there is no evidence of police misconduct that would warrant such a subpoena", as that ordered in *United States v. Tucker*, 249

17

F.R.D. 58 (S.D.N.Y. 2008), where, as conceded by the government, the defendant had "reasonable cause" to believe that cooperating witnesses, like the police in this case, were lying. Gov't. Mem. at p. 22n.6. Defendant submits that his own sworn affidavit and the other evidence he has submitted that he did not do what the police swore they saw him do on the night of the arrest, and the evidence that he was twice prosecuted by the same police precincts, exonerated, and paid damages (See opening memo and exhibits) is "reasonable cause" to believe that there is police misconduct in this case, justifying the subpoena as in *Tucker*.

## CONCLUSION

> FOR THE ABOVE STATED REASONS, THE SUPPRESSION HEARING SHOULD BE STAYED, THE MARCH 24 ORDER OF THE MAGISTRATE JUDGE SHOULD BE REVERSED OR VACATED IN THE PARTS OBJECTED TO, DEFENDANT'S OBJECTIONS SHOULD BE SUSTAINED, THE SO-ORDERED SUBPOENA SHOULD BE ISSUED FOR THE UF-250 AND SEARCH AND SEIZURE RECORDS, AND THE POLICE SHOULD BE ORDERED TO SUBMIT TO AN IN-COURT QUESTIONING CONCERNING THEIR WILLINGNESS TO BE INTERVIEWED PRE-HEARING BY THE DEFENSE.

Respectfully submitted,

```
                              LAWRENCE MARK STERN
                              100 Hudson Street, #6A
                              New York, N.Y. 10013
                              212-925-6863
                              Attorney for Defendant
                              Earl Morgan
```