UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :   **MEMORANDUM**
                     Plaintiff,                         :   **DECISION AND ORDER**
                                                             :
         - against -                                       :   09-CR-00573 (BMC)(MDG)
                                                             :
EARL MORGAN,                                                 :
                   Defendant.                         :
                                                             :
------------------------------------------------------------ X

**COGAN**, District Judge.

This case is before the Court on the defendant Earl Morgan's objections to Magistrate Judge Marilyn D. Go's July 5, 2009 Report and Recommendation ("R&R"), which recommended denying his motion to suppress physical evidence seized from his person pursuant to a police stop on July 25, 2009, denying his motion to dismiss the indictment, and denying his motion to preclude evidence of prior convictions or bifurcate the trial. For the reasons set forth below, the R&R is adopted and the motions are denied.

## BACKGROUND

The facts of this matter are set forth in Judge Go's detailed R&R and revisited only briefly here. On August 14, 2009, the grand jury returned an indictment charging Morgan as a felon in possession of a firearm, in violation of 18 U.S.C. § § 922(g)(1) and 924(a)(2). By motion filed January 27, 2010, Morgan sought, inter alia, suppression of evidence found pursuant to his arrest, dismissal of the indictment, and certain in limine rulings. Judge Go held an evidentiary hearing on April 15 and 28, 2010. The Government's evidence included testimony from two New York City Police Department ("NYPD") officers, Officers Francisco

Tejada and Washington Mosquera of the 84th Precinct. Morgan called NYPD Sergeants James Glancy, Titus Parham, and Christopher Smith of the 84th Precinct, NYPD Detective Ray Martinez of the Gun Enhancement Unit, NYPD Detective Albert Brust of the 88th Precinct, Esther Bartling, a civilian employee of the NYPD, Special Agent Ishmael Hernandez of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives, Donald Furey, Glenda Evans, and Derrick McDuffie. The parties submitted post-hearing briefs on May 27, 2010, and oral argument was held on June 4, 2010, before Judge Go. On June 22, Judge Go issued the R&R with her findings of fact and recommendation that defendant's motions be denied. Defendant timely filed his objections to the R&R on July 9, 2010.

## DISCUSSION

### I. Standard of Review

A district court judge may refer certain matters, including suppression of evidence or statements, to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1). If objections are timely filed, the district court must consider them *de novo*. Id.; see United States v. Padilla, 06-CR-824, 2007 WL 1958894, at *1 (E.D.N.Y. June 29, 2007). This *de novo* review neither requires the district court to "rehear the contested testimony" nor "conduct a new hearing on contested issues." United States v. Raddatz, 447 U.S. 667, 674-75 (1980). The statute "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, chose[s] to place on the magistrate's proposed findings and recommendations." Id. at 676. "Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." Id. at 675; see also United States v.

Taylor, 92 F.3d 1313, 1326-27 (2d Cir. 1996) (discussing Raddatz). In making its final determination, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)). The court is not required to review uncontested portions of the R&R. See United States v. Mackay, 07-CR-488, 2008 WL 4146359, at *1 (E.D.N.Y. Sept. 8, 2008) (citing Thomas v. Arn, 474 U.S. 140, 150 (1985)).

## II. Defendant's Objections

In Defendant's Objections to the Magistrate Judge's Report and Recommendation ("Defendant's Objections"), Morgan objects to specific factual findings[1], the ultimate probable cause and reasonable suspicion findings, and the recommendations to deny his in limine motions and motion to dismiss.

### A. Probable Cause and Reasonable Suspicion

The objections to Judge Go's factual findings generally cover the following areas: (1) witness credibility, (2) the officers' belief that Morgan was committing a violation, (3) the officers' belief that defendant may have been armed, and (4) the series of events immediately before and after the arrest. I address his specific objections in turn.

First, Morgan attacks Officer Tejada's testimony that he saw a urine stream before he arrested Morgan for public urination. Judge Go did not accept this portion of Officer Tejada's testimony. Morgan objects to the treatment of Officer Tejada's testimony on the grounds that the

---

[1] Morgan objects to "each and every part of the Magistrate Judge's Report and Recommendation." I will not consider his blanket objection since Fed. R. Civ. P. 72(b) requires specific objections. "To allow a party to trigger full de novo review by the district judge on the basis of the type of objections made here would make a mockery of the role of magistrate judges in fulfilling their important and well-recognized responsibilities . . . Rather than adding to the efficiency of the district courts, the magistrate judges' labors would be largely wasted if Rule 72(b)'s requirements were ignored." Bowens v. Atlantic Maintenance Corp., 546 F. Supp.2d 55, 59 (E.D.N.Y. 2008) (holding party's objections waived where objections were pro forma and inadequate).

record necessitates (1) a finding that Officer Tejada was lying, and (2) rejection of Officer Tejada's testimony in full.

This Court agrees with Judge Go that Officer Tejada may have been too far from Morgan to see a urine stream and does not credit Officer Tejada's testimony that he actually saw the urine stream.[2] I do not, however, make a finding that Officer Tejada intentionally falsified his testimony regarding the urine stream. It is a common occurrence that a witness will draw an inference based on direct observations at the time an event occurs, and the inference will then be remembered as a direct observation months later. That is all that happened here. Morgan was standing in a position consistent with urination (it is a somewhat distinctive position); Officer Tejada concluded at the time that Morgan was urinating, and then months later misremembered that he had actually seen rather than inferred the urine stream.

Second, Morgan objects to Judge Go's crediting of Officer Mosquera's testimony. At the hearing, Officer Mosquera testified that he saw one man urinating, but Agent Hernandez testified that immediately after the incident, Officer Mosquera said that he saw two men urinating. Judge Go acknowledged the discrepancy, but did "not find it sufficient to cast doubt on the entirety of the otherwise corroborated testimony adduced at the hearing that the officers saw only defendant urinating." R&R at 21. Judge Go's finding is supported by the record. As she noted, the Agent did not initially recall the details of the interview. The handwritten notation that refreshed his recollection was indeed "terse" and ambiguous. The discrepancy could also be a result of miscommunication. This Court adopts Judge Go's finding that the discrepancy between Agent Hernandez's testimony about what Officer Mosquera said after the incident and Officer

---

[2] While I do not accept his testimony that he saw the urine stream, evidence that in earlier interviews Officer Tejada stated that Morgan "appeared" to be urinating is not, as Morgan argues, inconsistent with his hearing testimony.

Mosquera's testimony at the hearing does not raise significant doubts about the otherwise consistent and credible testimony that one man, Morgan, was urinating.

Third, Morgan objects to Judge Go's findings regarding the officers' selections of different locations on a photograph as where they saw Morgan urinating. This Court has reviewed the three exhibits and the spots chosen by each officer. The marks are not drastically far apart but are generally in the same area – to the left of a prominent lamppost. The discrepancies are likely attributable to the nine months that had elapsed since the arrest and to differences in medium and vantage between being on the scene to viewing the landscape in a photograph. The differences between the spots chosen on the three photographs do not significantly affect the probable cause analysis.

Fourth, Morgan objects to Officer Tejada's testimony that Morgan's pants were blue and that he saw a bulge in Morgan's front pocket. Officer Tejada testified that he remembers Morgan wearing black pants, but photographic evidence at the hearing showed that Morgan's pants were actually dark blue. Morgan asserts that Officer Tejada's error about Morgan's pants color casts doubt on his testimony that he saw a bulge in defendant's pocket. This Court agrees with Judge Go that this is an inconsequential mistake. Even if the lighting were dim and affected Officer Tejada's ability to discern between dark blue and black, silhouettes and "[s]hapes of large objects under clothing would be visible. . ." R&R at 20. Morgan characterizes Judge Go's observation as "personal opinion," but it is an appropriate application of common sense to the facts. "[A] fact finder is not required to operate in an experiential vacuum. To the contrary, he may draw on the full range of his reason, experience, and common sense." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 84-85 (2d Cir. 2005).

Fifth, Morgan objects to findings regarding the respective positions and movements of Officers Tejada and Mosquera immediately before and during the pat-down and retrieval of the gun. Morgan argues that Officer Tejada could not have seen a bulge in Morgan's front pocket because he approached from behind, and points to discrepancies in Officers Mosquera's and Tejada's testimony. The testimony reveals that Morgan and the officers rapidly changed positions and their relationships in space to one another during the short time period of the stop and arrest. Accordingly, and because the officers' testimony is consistent with respect to the important underlying facts – that Officer Tejada saw a bulge and retrieved the gun from Morgan's right front pocket while Officer Mosquera assisted in the arrest – the minor discrepancies are insignificant to the probable cause analysis.

Sixth, Morgan objects to findings based on the time entries recorded by Officer Tejada in the memo book. At the hearing, Officer Tejada testified that he witnessed Morgan urinating at 12:44 a.m. and that he retrieved the gun at 12:46 a.m. In the memo book, the urination is logged at 12:46 a.m. and the gun retrieval at 12:49 a.m. Judge Go credited Officer Tejada's testimony that he did not look at his watch while he was making the arrest and used the SPRINT report as a reference when creating the memo book entries. Officer Tejada also credibly testified that he watched defendant for a few moments before making the first transmission and used the light cycle as a reference. This Court accepts his explanations of the minor time differences of two and three minutes and does not find that the discrepancies negatively affect witness credibility or the finding of probable cause.

Seventh, Morgan objects to Officer Tejada's testimony regarding the events surrounding the radio transmission in which Officer Tejada first reported the stop. The transmission requesting "non-emergency" backup is consistent with Officer Tejada's testimony that he had

made the arrest and removed the gun from Morgan's person. I do not draw any negative inferences from the fact that the first transmission does not mention the recovery of the gun. When Officer Tejada made the request for backup, things were "under control" and he did not need to alert the "non-emergency" unit of any unfolding events. At that point, Morgan was cuffed and standing with Officer Mosquera, and McDuffie was standing talking to Sgt. Glancy. I find Officer Tejada's testimony that he "didn't have an emergency but [was] requesting one unit for safety reasons [i]n case anything occurred" to be credible and consistent with other facts and testimony.

Eighth, Morgan objects to findings related to defense witness Furey's testimony. Judge Go asked Mr. Furey to compare distances at the intersection where the arrest occurred to distances at the intersection outside of the courthouse. In addressing Mr. Furey, Judge Go said "Cadman Plaza West" instead of "Cadman Plaza East." Nevertheless, Judge Go described the intersection at Cadman Plaza East, "right outside the courthouse" with "a bus stop across the street on the left." Judge Go misspoke, but because of her simultaneous and accurate description of Cadman Plaza East, the error affected neither Mr. Furey's testimony nor the determination of probable cause.

Ninth, Morgan objects to findings regarding McDuffie, the man accompanying him when he was stopped. Morgan first argues that the stop of McDuffie was unlawful. As a preliminary matter, Morgan cannot challenge the stop of McDuffie – he has no privacy right regarding McDuffie's person. See U.S. v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002). Furthermore, the testimony regarding the stop does not negatively affect the officers' credibility or the probable cause determination. Although the testimony suggests that the officers planned to stop both men, the record does not indicate that they ever prevented McDuffie from walking away until after

they suspected Morgan had a gun. Finally, the record amply supports Judge Go's finding that "Officers Tejada and Mosquera and Sgt. Glancy [were] more credible than McDuffie on the critical facts with respect to the defendant's suppression motion: that they saw defendant urinating in public and that in the ensuing stop, Officer Tejada recovered a gun from the defendant's person." R&R at 12.

Tenth, Morgan objects that inconsistencies in the officers' testimony are so severe that the record cannot provide confidence that the events took place as the officers say they did. Morgan cites two cases in support of this objection. In United States v. Hiruko, 320 F. Supp.2d 26 (E.D.N.Y. 2004), the Court found that an officer's testimony was not credible, but noted, "I might dismiss the foregoing inconsistencies as the byproduct of poor communication if it were not for other troubling features of Soto's testimony." Id. at 29. Here, Judge Go found the Government witnesses credible, the inconsistencies in testimony are not as severe, and "other troubling features" are not present. Another decision cited in objection to Judge Go's acceptance of the officers' story turned on the fact finder's skepticism about the basic elements of the Government's story – not minor discrepancies as are pointed out by Morgan here. United States v. Matos, No. 07-CR-870, 2009 WL 2883054, at *5 (E.D.N.Y. 2009) ("The court remains unpersuaded by the Government's theory that the evidence against Matos was obtained through a series of fantastic coincidences. . .") As a general matter, some degree of discrepancy or inconsistency is common and expected in witness testimony. "Precision as to some facts may be expected . . . but some variations are inevitable in one's memory and the articulation thereof with respect to details." Goldberg v. U. S., 425 U.S. 94, 128 n. 19, 96 S.Ct. 1338 (1976).

After observing the witnesses and hearing the testimony and other evidence, Judge Go found that any inconsistencies were minor and insufficient to discredit the testifying officers or

prevent a finding a probable cause. This Court adopts the finding of the R&R that the officers' stories are substantially similar on the critical facts, and any inconsistencies do not cast significant doubt on a finding of probable cause.

Finally, Morgan objects that the officers arrested him as part of an investigatory sweep of the neighborhood or because they knew that defendant was wanted as a witness in a homicide investigation. The evidence on this was entirely one-sided in the Government's favor. There was no evidence at all that the arresting officers had ever seen or heard of Morgan prior to his arrest. They stopped him because they believed he was committing a public urination violation.

The above objections to specific factual findings comprise Morgan's objection that the police did not have probable cause to justify stopping him.[3] "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003). "Probable cause does not require absolute certainty." Id. at 76. Morgan argues that the probable cause finding was based on "defendant merely standing with his back to [the police], legs apart, with his hands either in front of him or at his waist." This Court finds that the officers assessed the entire tableau, including Morgan's whole body posture, not just the general locations of his arms and legs. I adopt Judge Go's finding that probable cause existed based on all the circumstances testified to at the hearing, particularly that "[t]he officers saw the defendant at a distance of approximately 145 feet in an area illuminated by street lamps and determined based on the way he was standing and the placement of his hands that he was urinating." R&R at 31.

---

[3] Because the evidence supports a finding of probable cause, Judge Go did not consider whether the stop for an issuance of a summons is an arrest or a more limited seizure to which the lower standard of reasonable suspicion would apply. Terry v. Ohio, 392 U.S. 1, 30 (1986) (holding reasonable suspicion is required for an investigatory stop).

Morgan also objects to Judge Go's finding that the frisk was lawful: that after the police officers stopped defendant they had a reasonable belief that he might have been armed. A reasonable belief that a defendant might be armed is all that is required for a lawful frisk once a suspect has been stopped. Arizona v. Johnson, 129 S. Ct. 781, 784 (2009) ("Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.") Viewing a suspicious bulge in the pocket, without more, satisfies this requirement. Pennsylvania v. Mimms, 434 U.S. 106, 111-12, 98 S. Ct. 330 (1977). Judge Go determined, and this Court agrees, that Officer Tejada saw a suspicious bulge in defendant's right pocket, and observed behavior and movements that suggested defendant was trying to shield this part of his body from the officers' view. This Court adopts the finding that the officers had reasonable suspicion to justify the frisk.

Finally, Morgan argues that the gun must be suppressed because he was stopped pursuant to an unconstitutional statutory scheme. The New York Administrative Code treats public urination as a violation carrying a maximum sentence of 10 days, while the New York City Health Code treats it as a misdemeanor punishable by up to a year in jail. Morgan argues that these two laws provide for different sentences for the same conduct, violating the Fourteenth Amendment. I agree with Judge Go that I do not need to reach the question of the constitutionality of the state statutory scheme, since this case fits within the good faith exception to the exclusionary rule. The good faith exception exists when it is not the case "that a reasonable officer should have known that the statute was unconstitutional." Illinois v. Krull, 480 U.S. 340, 355 (1987). No New York Court has held that the public urination statutory scheme is unconstitutional and Officer Tejada and Sgt. Glancy testified that they have issued more than 10 summonses each for public urination.

B. **In Limine Motions**

Morgan raised several in limine motions which Judge Go recommends denying. Morgan objects to the recommendations on (1) his motion to preclude evidence of his prior felony convictions or bifurcate the trial, (2) his motion to preclude cross-examination of the defendant on his prior convictions, and (3) his motion to preclude introduction of a firearms trace summary. This Court denies the motion to preclude evidence of the prior convictions or bifurcate the trial, grants (with a caveat) his motion to preclude cross-examination, and defers decision on his motion to preclude introduction of the firearms trace summary.

This Court denies Morgan's motion to preclude evidence of his prior felony convictions. The Government has agreed to stipulate to the fact of Morgan's prior felony convictions, but Morgan seeks to preclude even evidence of the fact of his prior felony convictions. As Morgan has acknowledged, binding Second Circuit precedent provides that "in a prosecution under § 922(g)(1), there are no circumstances in which a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element." United States v. Chevere, 368 F.3d 120, 122 (2d Cir. 2004). Defendant's motion to preclude evidence of his convictions is denied.

Morgan's motion to bifurcate the trial is also denied. Although the Second Circuit has not announced a per se rule against bifurcation in § 922(g) cases, it has held that "bifurcation of the elements of a single-count felon-in-possession trial, absent the Government's consent, is generally error." U.S. v. Amante, 418 F.3d 220, 224 (2d Cir. 2005). The Circuit has "note[d] that it would be an extraordinarily unusual case in which bifurcation of the elements of a charge under § 922(g)(1) could possibly be appropriate." United States v. Belk, 346 F.3d 305, 311 (2d

Cir. 2003). This is not the "extraordinarily unusual case . . . where the facts underlying the prior felony would be presented to the jury and are so heinous as to overwhelm the trial of firearm or ammunition possession." Amante, 418 F.3d at 224. On the contrary, the Government has agreed to stipulate to the fact of Morgan's prior felony convictions, eliminating the risk of prejudice from introduction of evidence of their nature. The mere fact of "[a] prior conviction is not prejudicial where the prior conviction is an element of the crime." United States v. Gilliam, 994 F.2d 97, 100 (2d Cir. 1993). Defendant's motion to bifurcate his trial is denied.

### C. Motion to Dismiss

Morgan's motion to dismiss his indictment on the grounds that the felon-in-possession statute violates the commerce clause of the Constitution is denied. Section 922(g) does not violate the Constitution because it "includes an express jurisdictional element requiring the Government to provide evidence in each prosecution of a sufficient nexus between the charged offense and interstate foreign commerce." United States v. Santiago, 238 F.3d 213, 216 (2d Cir. 2001). At trial, the Government must prove that the gun was "shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1) (2000).

## CONCLUSION

Judge Go's R&R is adopted in its entirety except that the motion to preclude cross-examination on the issue of prior felony convictions is granted and decision on the motion to preclude introduction of the firearms trace summary is deferred. The motion to suppress and the

motion to preclude evidence of defendant's prior felony convictions or bifurcate the trial are denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 19, 2010